UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **GREGORY WATERS, on behalf of** | ) | |
| **Himself and others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-02467-SNLJ |
| | ) | |
| **THE HOME DEPOT USA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This case comes before the Court on plaintiff Gregory Waters' motion to remand (#16), which is fully briefed. For the reasons that follow, plaintiff's motion is **DENIED**.

## I. BACKGROUND

Plaintiff, a Missouri resident, has filed a class-action complaint challenging Home Depot's collection of certain state taxes on the sales of products to Missourians through "remote sales channels," including its online website (www.homedepot.com). On August 30, 2019, Home Depot removed the case from state to federal court pursuant to diversity jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).

The underlying facts are straightforward. Plaintiff says that, on February 28, 2019, he purchased a 20-piece Stanley tool set on Home Depot's website, which was to be delivered to his home in St. Louis County, Missouri. That tool set was shipped from one of Home Depot's facilities in Plainfield, Indiana. Plaintiff states his order "was not placed

1

at and did not involve, directly or indirectly, any of [Home Depot's] brick-and-mortar stores in Missouri."

The applicable law is more nuanced. Plaintiff says this case comes down to whether the online transaction at issue should invoke Missouri's imposition of a sales tax or a use tax. Plaintiff argues in his complaint that Section 144.020, RSMo, imposes "a sales tax on the sale of tangible personal property between a Missouri seller and a Missouri purchaser." That tax rate would be 4.225% plus applicable local sales taxes. On the other hand, plaintiff says "sales transactions involving [an] in-bound shipment of tangible personal property from an out-of-state location to a purchaser in Missouri … is subject to [a] compensating use tax" under Section 144.610, RSMo. Missouri's use tax is also 4.225% plus applicable local use taxes.

For his delivery address, Home Depot charged plaintiff a sales tax of 7.594%.[1] Plaintiff says he should, instead, have been charged a use tax rate of 4.225%. His complaint does not explain whether St. Louis County imposes an additional local use tax, but proceeds instead on the assumption that it does not. In any event, plaintiff seeks to represent a class of consumers who, like him, were charged "tax monies at the higher sales tax rate rather than the lower use tax rate" as part of a "remote sales channel" purchase. Based on the alleged overtaxing by Home Depot, plaintiff proceeds down the state-law liability avenues of a Missouri Merchandising Practices Act ("MMPA")

---

[1] Plaintiff says the total sales tax rate for his address, according to the Missouri Department of Revenue, should have been 7.613%. The 0.019% rate discrepancy is not explained, though it does not matter here since the thrust of plaintiff's argument is that he should have been charged a sales tax at all—whatever the appropriate rate.

violation under Section 407.020, RSMo (Count I), unjust enrichment (Count II), negligence (Count III), and money had and received (Count IV).

Before this Court, now, is plaintiff's motion for remand. Plaintiff makes three independent arguments for remand. First, he argues this case should be remanded on "comity grounds." Second, he argues the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, prevents this Court's exercise of federal jurisdiction in that his remedies seek, among other things, an injunction barring the collection of certain state taxes. Third, he argues Home Depot erroneously calculated the $5 million amount-in-controversy threshold for purposes of satisfying jurisdiction under CAFA.

## II. ANALYSIS

### A. Comity Doctrine as Applied to State Tax Law Cases

The U.S. Supreme Court has noted a long-standing "federal reluctance to interfere with state taxation." *Levin v. Commerce Energy, Inc*., 560 U.S. 413, 424 (2010); *see also Dows v. Chicago*, 78 U.S. 108, 110 (1870). "The autonomy and fiscal stability of the States survive best when state tax systems are not subject to scrutiny in federal courts." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 102 (1981).

Here, the parties' comity doctrine arguments focus upon whether this Court is likely to disrupt Missouri's tax regime through the exercise of federal jurisdiction. On the one hand, plaintiff says the comity doctrine must apply because "[t]his Court would undoubtedly have to interpret Missouri state law and ultimately apply its analysis as a federal court to a state tax collection regulation and regime." "If plaintiff's suit is successful," he says, "Home Depot will end up collecting less in [] tax[es] and [will]

writ[e] a smaller check to the Missouri Department of Revenue"—a so-called "state revenue reduction" that "interferes with the flow of state tax revenue." To the contrary, Home Depot says this lawsuit will not disrupt the flow of state tax revenue, but instead "this Court would merely have to determine whether a private entity properly collected taxes from Missouri customers making purchases through remote sales channels[.]"

Home Depot has the better argument. Foremost, neither party believes the law is "novel and unsettled" such that the state courts need provide a "surer-footed reading of [their own] laws." *Grano v. Barry*, 733 F.2d 164, 169 (D.C. Cir. 1984). Indeed, in seeking remand, plaintiff, himself, maintains that "there is seventy-five (75) years of Missouri precedent holding that [the at-issue] transactions are exempt from sales tax pursuant to Missouri's 'in commerce exception.'" The fact is, merely *applying* Missouri law is not the standard for remand under the comity doctrine. Instead, as the Supreme Court instructs, comity precludes federal jurisdiction "only when plaintiffs have sought district court aid in order to arrest or countermand state tax collection." *Hibbs. v. Winn,* 542 U.S. 88, 107 n.9 (2004). In *Levin,* the Court further explains that comity addresses the need to avoid "reshap[ing] relevant provisions of [State] tax code[s]" under the guise of constitutional interpretation. 560 U.S. at 429. For that reason, *Levin* counsels district courts to provide state courts an initial opportunity to interpret their own laws in a way that avoids needless federal intervention. *Id*. In other words, "[p]rinciples of comity in our federal system require that the state courts be afforded the opportunity to perform their duty." *Webb v. Webb*, 451 U.S. 493, 500 (1981).

Missouri courts have had more than a fair opportunity to perform their duty here. To be sure, Missouri's sales-and-use-tax regime is not arcane. "It is elementary that the use tax is complementary to the sales tax and is intended to tax transactions in which no sales tax can be imposed because the sale is not made in Missouri." *Smith Beverage co. of Columbia, Inc. v. Spradling*, 533 S.W.2d 606, 607 (Mo. 1976); *see also Olin Corp. v. Dir. of Revenue*, 945 S.W.2d 442, 443 (Mo. banc. 1997). Thus, "The scope of the sales tax is limited to sales ***made in Missouri***." *Street v. Director of Revenue*, 361 S.W.3d 355, 360 (Mo banc 2012) (emphasis added), *citing* § 144.020 RSMo. Whereas, "[a] use tax is imposed on tangible personal property ***purchased outside of Missouri*** and then used within the state if the purchase would have been subject to sales tax had it occurred in-state." *Business Aviation, LLC. v. Director of Revenue*, 579 S.W.3d 212, 216 (Mo. banc 2019) (emphasis added), *citing* § 144.610, RSMo.

There is also the statutory interplay between sales and use taxes as affected by the in-commerce exemption (to sales tax) under Section 144.030.1, which states in full:

> There is hereby specifically exempted from the provisions of sections 144.010 to 144.525 and from the computation of the tax levied, assessed or payable pursuant to sections 144.010 to 144.525 ***such retail sales as may be made in commerce between this state and any other state of the United States***, or between this state and any foreign country, and any retail sale which the state of Missouri is prohibited from taxing pursuant to the Constitution or laws of the United States of America, and such retail sales of tangible personal property which the general assembly of the state of Missouri is prohibited from taxing or further taxing by the constitution of this state.

§ 144.030.1, RSMo. (emphasis added). The reference to "sections 144.010 to 144.525" is to Missouri's sales tax laws. Thus, Section 144.030.1 acts as a carve-out to transactions

5

otherwise subject to sales tax, which are exempted because the "sale [was made] in interstate commerce." *Lynn v. Dir. of Revenue,* 689 S.W.2d 45, 47 (Mo. banc. 1985). But, even though exempted from sales tax, "[i]nterstate commerce must pay its way" and this is where the complementary use tax comes in. *Fall Creek Const. Co, Inc. v. Dir. of Revenue*, 109 S.W.3d 165, 171 (Mo. banc. 2003). Again, under Section 144.610.1, where tangible property purchased outside of Missouri is "stor[ed], us[ed], or consum[ed]" in Missouri, it is subject to a corresponding use tax. Moreover, a seller with a sufficient nexus to Missouri—such as having physical store locations there—must "collect the [use] tax at the time of the sale and remit it to the department [of revenue]." 12 CSR 10-113.200(1); *Fall Creek Const. Co., Inc.,* 109 S.W.3d at 171.

Under these parameters, the task at hand is simply to determine whether the parties' transaction was exempted under Section 144.030.1 because it was "in commerce" between the states. If so, the transaction was subject to use tax; if not, it was subject to sales tax. A proper inquiry focuses on the interstate quality of the parties' transaction, and in that regard the interpretive regulations explaining Section 144.030.1, though only persuasive in authority, are quite helpful. *See Dilts v. Dir. of Reveue*, 208 S.W.3d 299, 302 (Mo. App. W.D. 2006).

12 CSR 10-113.200, in particular, states that a transaction is "in commerce" when "the orde*r is **approved outside Missouri** and the **tangible personal property is shipped from outside Missouri directly to the buyer in Missouri***." *Id*. at 10-113.200(2)(B) (emphasis added). In this situation, use tax is collected. *Id*. at 10-113.200(1). In contrast, "[i]f delivery is made to seller or an agent of seller [] in Missouri and subsequently

delivered to the buyer in Missouri, the sale is subject to Missouri sales tax." *Id*. at 10-113.200(3)(C). Furthermore, "[i]f delivery is made directly from the out-of-state seller to the buyer in Missouri, the sale is subject to sales tax if the order was approved in Missouri." *Id*. In sum, the regulation makes clear that a seller's approval of the transaction and the transfer of ownership to buyer cannot both occur in Missouri in order for the transaction to retain its interstate quality under the in-commerce exemption.

The regulation also provides helpful examples to illustrate these principles:

(A) ***A seller accepts orders in Missouri***. The seller fills orders from its warehouses located both within and without Missouri. ***A customer orders goods from the seller in Missouri.*** The ***order is filled from an out-of-state warehouse and shipped directly to the customer***. The transactions are subject to sales tax because the order is accepted in Missouri.

…

(H) A seller has a location in Missouri. ***A Missouri customer places an order directly with the seller's non-Missouri location via e-mail***. The ***goods are shipped directly to the Missouri customer from the non-Missouri location***. ***The Missouri office does not participate in the sale***. The seller must collect and remit use tax.

12 CSR 10-113.200(4)(A), (H) (emphasis added). It is clear the transaction involved here must fall under one of these two examples and, to be sure, the parties themselves rely on them. But which of these examples applies is a factual determination that need not be made now. Rather, in resolving the issue of remand, it is enough to hold that Missouri law is neither unsettled nor novel on the issues confronted in this case. All that is being asked is for this Court to make a routine application of the in-commerce exemption. This Court declines, therefore, to abstain as a matter of comity.

## B. The Tax Injunction Act's Effect on This Court's Jurisdiction

Plaintiff next argues that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, requires that "A federal court [] never [] interpret[] the nuances of Missouri state sales tax law." Plaintiff points out that one of his requested remedies is "injunctive and declaratory relief" barring Home Depot from continuing to charge a sales tax on purchases made through "remote sales channels" such as its website. If he is successful, he says, the effect would be to "stop the flow of Missouri state tax revenues." This argument is, essentially, a narrower retelling of plaintiff's first argument. Indeed, "the comity doctrine is more embracive than the TIA." *Levin*, 560 U.S. at 424; *see also Direct Marketing Ass'n v. Brohl*, 135 S.Ct. 1124, 1132 (2015) (noting that the TIA "partially codifies" the broader comity doctrine). As such, this Court finds that plaintiff's TIA arguments fail for similar reasons.

The TIA prohibits federal courts from restraining "the assessment, levy, or collection of any tax under State law where a plain, speedy, and efficient remedy may be had in the courts of such States." 28 U.S.C. § 1341. Said differently, "[t]he TIA divests federal courts of subject-matter jurisdiction in cases where the relief sought would diminish or encumber state tax revenue." *Perry v. Coles County, Ill.*, 906 F.3d 583, 587 (7th Cir. 2018). Beyond that restriction, the TIA does not speak. "Nowhere does the legislative history announce a sweeping congressional direction to prevent federal-court interference with all aspects of state administration." *Hibbs*, 542 U.S. at 104.

The Supreme Court notes that "[t]hird-party suits not seeking to stop the collection (or contest the validity) of a tax imposed on plaintiffs … [are] outside Congress'

8

purview." *Id*. Here, neither party disputes that Missouri has imposed a tax on the online transaction at issue. The only question is whether that tax comes in the form of sales tax or use tax—and that question, as noted, does not require new-found interpretation of Missouri's tax laws, but merely routine application of them. So, it is inaccurate to say that this Court would restrain the "assessment, levy, or collection" of any Missouri tax. *See* 28 U.S.C. § 1341. Further, it is a red herring to focus, as plaintiff does, simply on the negative impact this suit may have on state revenues. *See Direct Marketing Ass'n*, 135 S.Ct. at 1133 (noting that, under TIA precedent, "courts did not refuse to hear every suit that would have a negative impact on States' revenues"). Rather, the question, properly framed, is "whether the [sought-after] relief to some degree stops [an] 'assessment, levy, or collection.' " *Id*. (quoting 28 U.S.C. § 1341)). No such relief is sought here. This Court is only being asked to see that Home Depot pays the tax actually imposed by Missouri law and, if necessary, refund overpayments to its customers. Such a case does not restrain either the assessment or collection tax of tax by Missouri; rather, it effectuates those efforts.

**C. Satisfaction of CAFA's $5 Million Amount-in-Controversy Threshold**

Plaintiff's final argument is that Home Depot has inaccurately calculated the amount of damages for purposes of satisfying CAFA's $5 million amount-in-controversy requirement. 28 U.S.C. § 1332(d)(2).

This Court's analysis begins with recognizing the Supreme Court's two-phase framework for addressing the amount-in-controversy requirement. First, "[w]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy

allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC. v. Owens*, 574 U.S. 81, 87 (2014). But, second, where "the plaintiff contests the defendant's allegations," Section 1446(c)(2)(B) requires "both sides to submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* (citing 28 U.S.C. § 1446(c)(2)(B)); *see also Pirozzi v. Massage Envy Franchising, LLC.*, 938 F.3d 981, 984 (8th Cir. 2019) (where no challenge is made, amount-in-controversy allegations are "a pleading requirement, not a demand for proof" that must merely be plausibly alleged).

Plaintiff, here, takes issue with the fact that Home Depot "failed to submit any evidence of the actual sales data and the actual addresses to which Home Depot shipped its goods" for purposes of determining the initial amount of income received for which to then calculate the alleged overpayment of taxes. For its part, Home Depot has submitted an affidavit by its "director of indirect tax," Mr. Jeff McGhehey, who states that Home Depot collected $17,486,084.07 in taxes between May 2014 and May 2019—the class period selected by plaintiff—"from customers who ordered products on *www.homedepot.com* for shipment to Missouri addresses."[2] Doing a bit of math, Home Depot says the amount-in-controversy—that is, the amount of taxes that were purportedly

---

[2] McGhehey's affidavit states that it is "supplemental" to another affidavit that was purportedly submitted alongside Home Depot's Notice of Removal as Exhibit B. However, no such exhibit was attached.

10

over-collected—is approximately $7,757,521.36.[3] It is plaintiff's contention, though, that this final number is pure speculation because "Home Depot submits no actual sales data[,] fail[s] to identify the actual addresses to which [it] shipped its goods[, and] fails to identify what amount of taxes it collected on sales … that were shipped … for in-store pickup [which] is not subject to use tax in Missouri." Plaintiff suggests "a more realistic amount of actual damages [is] $3,925,964" based on various factors that Home Depot's calculation does not consider.

Plaintiff's demand for evidentiary certainty goes beyond what is required under CAFA. When the preponderance of evidence standard applies, "the defendant's showing on the amount in controversy may rely on reasonable assumptions," and there is no demand at the early stages of removal to conclusively establish damages. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019); *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013) (noting that a defendant is not required to "confess liability for the entire jurisdictional amount" in order to overcome the amount-in-controversy threshold). Thus, though he criticizes Home Depot's calculations, plaintiff fails to do what *Dart* demands, which is to "submit proof"—that is *competing proof*—so that this Court can fairly weigh, "by a preponderance of the evidence, whether the

---

[3] To arrive at this number, Home Depot divides the $17,486,084.07 collected in taxes by the sales tax rate of 7.594% to reach $230,261,839.22 in pre-tax sales revenue—i.e. $17,486,084.07 is 7.594% of $230,261,829.22. The total pre-tax sales figure of $230,261,839.22 was then multiplied by 4.225%—the use tax rate—to come to a figure of $9,728,562.71. That is the hypothetical figure of use taxes that should have been collected. Subtracting the hypothetical figure of $9,728,562.71 from the $17,486,084.07 in actual taxes collected results in an over-collection of $7,757,521.36—i.e. the amount in controversy.

11

amount-in-controversy requirement has been satisfied." 574 U.S. at 88. Implicit in *Dart*'s instruction is the idea that plaintiff's challenge have a supportive evidentiary basis for which to challenge Home Depot's allegations; simply second-guessing a removing defendant's allegations is insufficient.

It is particularly concerning that plaintiff says almost nothing about the attorneys' fees and punitive damages at play, both of which he seeks. One of plaintiff's claims asserts a violation of the MMPA, which permits an award of punitive damages. *See* § 407.025.1, RSMo. Even adopting plaintiff's conservative estimate of $3,925,964 in compensatory damages, any variety of single-digit punitive damage multipliers will send the amount-in-controversy well above the $5 million threshold. *See Lee ex rel. Lee v. Borders*, 764 F.3d 966, 975-976 (8th Cir. 2014) (noting "few awards exceeding a single-digit ratio between punitive and compensatory damages … will satisfy due process"). For example, even a conservative 1:1 ratio would result in total damages of roughly $7,851,928 using plaintiff's own estimations. The Eighth Circuit, in fact, recently accepted the possibility of a 27:1 ratio in an MMPA case for which to presume satisfaction of CAFA's amount-in-controversy requirement. *See Pirozzi*, 938 F.3d at 984. Similarly, Missouri law permits an award of attorneys' fees in MMPA cases for "the amount of time reasonably expended." *See* § 407.025.1, RSMo. A class-action MMPA case involves some measure of "risk and complexity" that often generates considerable fees. *See, e.g., Faltermeier v. FCA US, LLC.*, 899 F.3d 617, 622 (8th Cir. 2018) (potential fee of at least $1.4 million not "clearly erroneous" in MMPA case involving auto manufacturer's misrepresentations about safety of certain vehicles). The Court will not

opine on the expected hours to be worked in this case or the hourly fee to be collected—neither party endeavors to answer that question—but, suffice it to say here, a likely sizeable amount attorneys' fees, when combined with plaintiff's compensatory damages estimation and a conservative punitive damages award, ensures by a preponderance of evidence that the amount-in-controversy exceeds $5 million.

In drawing these conclusions, this Court emphasizes that "the amount in controversy is simply an estimate of the total amount in dispute." *Raskas*, 719 F.3d at 887 (quoting *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). As the removing defendant, Home Depot is permitted to rely on "reasonable deductions, reasonable inferences, or other reasonable extrapolations" to establish the amount in controversy. *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017). Finding that Home Depot has done enough to substantiate its amount-in-controversy estimates, and that plaintiff offers no contrary proof to seriously challenge them, this Court concludes the $5 million amount-in-controversy requirement is satisfied. *See Northup Props, Inc. v. Chesapeake Appalachia, LLC.*, 567 F.3d 767, 771 (6th Cir. 2009) (defendant's affidavits were specific enough to establish amount-in-controversy threshold by a preponderance of the evidence where they did not require "judicial star-gazing" to quantify the value at issue).

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Gregory Waters' motion to remand (#16) is **DENIED**.

So ordered this 11th day of March 2020.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE